to claim a preference in the notice of trial, or to serve a notice of motion for a preference with the notice of trial. Issues in a special proceeding to be tried by a jury are to be placed upon this calendar, not because such issues are entitled to a preference by the Code, but because the rule makes such a provision for the trial of such issues. In such a proceeding a party may make an application for an order placing the issues upon this calendar for trial at any time after the service of a notice of trial and placing the cause upon the calendar.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion granted. All concur.

---

(39 App. Div. 502.)

### BRUGER v. BUCHTENKIRCH.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

LANDLORD—LIGHTING HALL—INJURY TO LICENSEE.

Plaintiff, in an action against a landlord for injury from a fall down steps extending across the hallway of a tenement house, received by one on the premises to see a tenant, having shown that there was no light, except a little coming through transoms, not enough to penetrate as far as the obscure stairs, may, after defendant has given evidence that he had put a gas fixture near the stairs, and instructed the janitor to keep it lighted from early in the morning till late at night, and that it was burning two hours before and half an hour after the accident, which was at noon, show that it was the custom to cut off the gas from this burner during the daytime.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term.

Action by Emily Bruger against Herman Buchtenkirch. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edwin B. Root, for appellant.
Edward W. S. Johnston, for respondent.

PATTERSON, J. This action was brought to recover damages for personal injuries sustained by the plaintiff in a hallway of a tenement house belonging to the defendant in the city of New York. She went upon the premises to see a tenant, with whom she had some business to transact. That tenant resided in the upper part of the house, but the plaintiff was not aware of that fact. On arriving at the house, she rang the bell, the door was opened by some appliance from above, and she found herself in the hallway, which she describes as being dark. She walked carefully along the hall, until she reached a point some 19 feet from the entrance. While walking, as she says, carefully along, with her hand upon the wall, she came to some steps which extended across the hall, which steps she could not see, and of the existence of which she did not know, and she fell and was injured. It was shown that there were apartments in the rear of the building on the first floor, and it would

seem that the plaintiff was going to one of the rear apartments to ascertain in what part of the house the person she wished to see lived. It may be assumed, for all the purposes of this case, that the plaintiff was upon the premises by an implied invitation of the landlord, and that she exercised due care in moving along the hallway. The complaint was dismissed at the close of the evidence on both sides, and upon the ground that the whole evidence showed the defendant had not failed in any duty he owed to those who came upon the premises by an express or implied invitation from him.

On a former appeal in this action from a judgment dismissing the complaint, the rule of law applicable was stated. 29 App. Div. 342, 51 N. Y. Supp. 464. The cardinal point upon which the case then turned, and now turns, is the darkness of the hallway; the appellant conceding on the record that unsafety resulted only from darkness. It was stated in the opinion on the former appeal that, as a general rule, a landlord is not required to furnish artificial light in a hallway of a tenement; but it was also held that where there is an unusual construction of a hallway, rendering it unsafe without artificial light, and by reason of the want of such light a visitor looking for a tenant falls and is injured in the hallway, a question is presented for the jury whether the landlord has exercised that reasonable care for the safety of those lawfully upon the premises which it is his duty to exercise. It was also held that proof might be given in this case "to support the plaintiff's theory that, by reason of the unsafe construction of stairs across the hall, it was incumbent upon the defendant, in the exercise of reasonable care in rendering the place reasonably safe, to supply artificial light. If such proof had been given, there would have been sufficient to go to the jury upon the question of the defendant's negligence."

Upon the trial now under review, the plaintiff gave evidence which made out a prima facie case, within the requirement of the decision on the former appeal. The plaintiff testified that the place was dark, that there was no artificial light, that no natural light came through from the front entrance, and that in the rear there was a little light coming through transoms, but not sufficient to penetrate as far as the obscure stairs down which she fell. The defendant, on the other hand, introduced evidence tending to show that he had done everything that reasonably could be required of him to make the place safe. When he became the purchaser of the property, he had a gas fixture put in immediately by the stairs, and gave instructions to the janitor or person in charge of the building to have the gas lighted at that burner from an early hour in the morning until half past 10 at night. The duty that devolved upon the landlord was, not only to supply the means of lighting the hall at the point where the accident occurred, but to do everything reasonable to maintain that light. The evidence on his behalf is clear that, as a general custom, the gas was kept burning at the point referred to during the daytime, and that on the very morning on which this accident occurred the gas was burning at 10 o'clock (the accident occurring at noon, or a little after), and that it was also burn-

ing at half past 12 o'clock; and there was also evidence to show the gas was lighted there every day. The landlord, therefore, showed, without contradiction, not only that he had provided the means of lighting the hall, but that it was customary to have that light burning, and that it was burning on the very morning on which the accident happened.

But this condition of the evidence resulted from the exclusion by the trial judge of an inquiry which, had it been pursued, would have produced a very material modification of the case. If the duty to maintain the light was not performed through the remissness of the defendant's employés, or for any other reason for which he would be chargeable, it would certainly be proper to allow proof thereof to go to the jury. The plaintiff did offer evidence of that character. The witness Steinmetz was asked:

"Q. Was there any custom in the house, about the time of this accident, and for several years before the accident, in regard to the time of lighting this light near the stairs in the rear of the hall? (That was excluded, under objection and exception.) Q. Do you know whether, during the daytime, the gas which fed the light was cut off in the cellar? A. It was. The Court: Strike out the answer. Q. Was it, or was it not? The Court: The answer may be recorded that she answered: 'Yes; she knows.' Q. Was it, or was it not, so cut off? (That was excluded, under objection and exception. The witness then said, in answer to the court, "I do not know whether it was not cut off on Thanksgiving Day,"—by which she says she meant, "I don't know, from having seen it cut off on Thanksgiving Day.") Q. But do you know what the custom was in regard to cutting it off? (That was excluded, under objection, and an exception was taken.)"

Thus there was excluded from the case evidence which was offered by the plaintiff to show that it was the custom to cut off the gas from this burner during the daytime. That proof was to be opposed to that which the defendant might offer, and did offer, upon the subject of his performance of his whole duty in maintaining the light, which was as much required of him as the mere furnishing of an appliance for lighting. The question asked went directly to the establishment of negligence on the part of the defendant, namely, to show that it was a usual thing to extinguish the light in this hall by cutting off the supply of gas from the cellar.

For the exclusion of this evidence, the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., and INGRAHAM, J., dissent.

INGRAHAM, J. I dissent. It appeared, without contradiction, that the defendant furnished a light, which was burning just before and just after the accident, and he was not responsible for the light being extinguished at the moment of the happening of the accident.